**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reda Mae Palmer, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Web Industries Inc., ) <br> ) <br> Defendant. ) <br> ) | No. CV 04-2362-PCT-SMM <br><br> **MEMORANDUM OF DECISION AND ORDER** |

On October 29, 2004, Plaintiff Reda Mae Palmer ("Plaintiff") filed suit regarding a 2004 Jeep Grand Cherokee she purchased from defendant Web Industries, Inc., d/b/a Anderson Chrysler, Plymouth, Dodge, Jeep ("Defendant"), a car dealership located in Lake Havasu City, Arizona. (Dkts. 1; 18; 51 at ¶6; 62 at ¶1.) Plaintiff alleged claims for violation of the Federal Motor Vehicle Information and Cost Savings Act pursuant to 49 U.S.C. § 32701[1] (the "Odometer Act" or the "Act"), Consumer Fraud pursuant to A.R.S. § 44-1521, and Breach of Contract. (Dkt. 18.) With respect to her consumer fraud claim, Plaintiff requests punitive damages. (Dkt. 18 at ¶47.)

---

[1] Plaintiff incorrectly describes the statute she seeks relief under as the "Motor Vehicle Information and Cost Savings Act." (Dkt. 18 at ¶32.) The "Motor Vehicle Information and Cost Savings Act," which was codified at 15 U.S.C. §§ 1981-1991, was repealed by Pub.L. No. 103-272, § 7(b), 108 Stat. 1379 (1994). Its successor, the statute at issue in Count 1, 49 U.S.C. § 32701 et seq., is located in Chapter 32 of Title 49 of the United States Code, which is titled "Odometers." Accordingly, the Court will refer to this statute as the "Odometer Act."

Pending before the Court is Defendant's Motion for Summary Judgment on each of Plaintiff's three claims as well as her request for punitive damages. (Dkt. 49.)[2] Also pending is Plaintiff's Cross-Motion for Summary Judgment on her consumer fraud and breach of contract claims. (Dkt. 50.) Considering the arguments raised by the parties, the Court issues the following ruling.

## FACTUAL BACKGROUND

### A. Facts that are Not Genuinely Disputed by Either Party

On September 11, 2004, with the assistance of salesman Felix Sierdsma ("Sierdsma"), Plaintiff purchased a new 2005 Chrysler Pacifica from Defendant. (Dkts. 51 at ¶7; 62 at ¶1.)

On September 24, 2004, Plaintiff returned to Defendant intending to exchange the Pacifica for a smaller car. (Dkts. 51 at ¶9; 62 at ¶4.) Plaintiff was prepared to lose some money in getting another vehicle. (Dkts. 51 at ¶11; 62 at ¶5.) Following Plaintiff's initial discussions with Sierdsma and Tom Christensen, the used car sales manager, Sierdsma drove up to the front of the dealership in a 2004 Jeep Grand Cherokee. (Dkts. 51 at ¶¶12-14; 62 at ¶¶7, 12.) After test driving the Jeep, Plaintiff agreed to purchase it for $29,999.00, with a trade-in credit of $24,500.00 on the Pacifica. (Dkts. 51 at ¶¶22, 26; 62 at ¶6.)

The Sales Contract and Purchase Money Security Agreement (the "Sales Contract") Plaintiff signed in order to purchase the Jeep described the Jeep as "new." (Dkts. 51 at ¶¶24, 26 and ex. F; 62 at ¶22.) Instead of making a mileage disclosure on the title, Defendant provided Plaintiff a "Secure Odometer Disclosure," which certified the Jeep's odometer reading of 17,752 miles as "the actual mileage." (Dkts. 51 at ¶36, Ex. I.) In addition, Plaintiff executed a Title and Registration Application and a Vehicle Service Agreement, each of which properly stated the Jeep's actual mileage of 17,752. (Dkt. 49, Ex. 3.)

---

[2] The Court did not set oral argument because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions, and oral argument would not have aided the Court's decision. See Mahon v. Credit Bur. of Placer County Inc., 171 F.3d 1197, 1200 (9th Cir. 1999).

1  A few days later, when Plaintiff went to register the Jeep, the Arizona Motor Vehicle Department told her that the Jeep was not "new" and had been previously registered to another person. (Dkt. 51 at ¶40.) Plaintiff immediately contacted Sierdsma, informed him of her findings, and told him that she wanted to cancel the contract and get her money back. (Dkt. 51 at ¶41.) Sierdsma told Plaintiff that the "new" designation was a mistake and that he would call her back. (Dkt. 51 at ¶42.) Sierdsma never called Plaintiff back. (Id.)

Plaintiff parked the Jeep in her garage and filed the instant lawsuit. (Dkt. 51 at ¶43.) Plaintiff is still making monthly loan and insurance payments on the Jeep. (Dkt. 51 at ¶44.)

**B.      Facts Upon Which There is A Material Factual Dispute**

   **1.      Facts Material to Plaintiff's Consumer Fraud Claim**

Plaintiff claims that when she asked Sierdsma why a new vehicle would have 17,000 miles on it, he told her that the Jeep was previously driven by a company executive. (Dkt. 51 at ¶20.) Sierdsma denies telling Plaintiff that the Jeep was previously driven by an executive with the company. (Dkt. 62 at ¶18.)

Based on the operating policies and procedures of the dealership, Defendant contends the Jeep was designated as "new" on the Sales Contract because of a clerical mistake because the computer system automatically defaults to "new." (Dkt. 62 at ¶22.) Plaintiff contends the dealership's computer system does not automatically default to "new," but instead requires personnel to specifically designate a vehicle as "new" or "used," and thus Defendant purposefully designated the Jeep as "new." (Dkt. 63 at 1-3.)

   **2.      Disputed Facts Material to Plaintiff's Breach of Contract Claim**

Plaintiff claims that, although she was fully aware of the vehicle's mileage, she believed the Jeep was a top-of-the-line factory demonstrator model that had been taken care of extremely well, and had never been owned or registered by an ordinary consumer. (Dkt. 51 at ¶21.) This belief was based on Sierdsma's representation that the Jeep was driven by an executive and the "new" designation on the Sales Contract. (Id.) Plaintiff avers that

1 she would not have agreed to buy the Jeep if she had known that it was an ordinary used
2 vehicle. (Dkt. 51 at ¶31.)

3 Defendant claims Plaintiff knew the Jeep was not "new" because she "was fully aware
4 of the vehicle's mileage," 17,752 miles. (Dkt. 49 at 7.) Defendant further claims that no one
5 from the dealership told Plaintiff the Jeep was "new" before she agreed to buy it and no one
6 from the dealership told Plaintiff the Jeep had never been registered. See Dkt. 49, ex. 1 at
7 25, 31-34, 38.

## STANDARD OF REVIEW

9 A court must grant summary judgment if the pleadings and supporting documents,
10 viewed in the light most favorable to the nonmoving party, "show that there is no genuine
11 issue as to any material fact and that the moving party is entitled to a judgment as a matter
12 of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
13 Substantive law determines which facts are material. See Anderson v. Liberty Lobby, Inc.,
14 477 U.S. 242, 248 (1986). Thus, mere allegations of a factual dispute between the parties
15 will not defeat an otherwise proper motion for summary judgment. Rather, Rule 56 requires
16 that there be a genuine issue of material fact, which is a dispute capable of affecting the
17 outcome of the case. Id. Accordingly, summary judgment is proper if, under governing
18 laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact
19 could resolve a factual issue in favor of either party, summary judgment should not be
20 granted. Id.

21 The movant on a summary judgment motion bears the initial burden of providing a
22 legal basis for its motion and identifying those portions of the record which demonstrate the
23 absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party
24 satisfies this burden, the opposing party must produce specific evidence, through affidavits
25 or admissible discovery material, to show that a genuine issue for trial exists.
26 See Fed.R.Civ.P. 56(e). All inferences drawn from the evidence must be viewed in the light
27 most favorable to the non-moving party. Eastman Kodak Co. v. Image Tech'l Servs., Inc.,

1  504 U.S. 451, 456 (1992). However, inferences must be based on evidence which, if
2  believed, would be sufficient to support a judgment for the nonmoving party. <u>Celotex</u>, 477
3  U.S. at 322. Inferences cannot be created by pointing to "some metaphysical doubt as to the
4  material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586
5  (1986). Deference to the nonmoving party has limits: (i) a plaintiff cannot rest on the
6  allegations in her pleadings to overcome a motion for summary judgment (<u>Brinson v. Linda</u>
7  <u>Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995)); and (ii) self-serving affidavits will
8  not establish a genuine issue of material fact if they fail to state facts based on personal
9  knowledge or are too conclusory (<u>Rodriguez v. Airborne Express</u>, 265 F.3d 890, 902 (9th
10 Cir. 2001)).

## DISCUSSION

**A.    Summary Judgment Will Be Granted on Plaintiff's Odometer Act Claim**

      **1.    The Odometer Act**

Plaintiff's first claim was filed pursuant to the Odometer Act, which requires that the transferor of a motor vehicle provide the transferee with a written disclosure either "of the cumulative mileage registered on the odometer," or "that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually travelled." 49 U.S.C. § 32705(a)(1)(A)(B). Regulations construing the Act require a transferor to "disclose the mileage to the transferee in writing on the title." 49 C.F.R. § 580.5(c). In cases where the title certificate is unavailable, the regulations permit such disclosure to be made on a supplemental form. <u>Id.</u> § 580.5(g). The Act allows a private civil action against a transferor that has violated the Act "with intent to defraud." 49 U.S.C. § 32710.

In her Odometer Act claim, Plaintiff alleges that, pursuant to 49 C.F.R. §580.5(c), Defendant was required to disclose the mileage of the Jeep "in writing **on the title.**" (Dkt. 18 at ¶33, emphasis in original.) Plaintiff alleges that Defendant violated the Act by failing to disclose the mileage on the title in order to prevent her from learning "the

- 5 -

1  true history of the Jeep" "as a step in [Defendant's] scheme to make [Plaintiff falsely] believe
2  she was purchasing a factory demonstrator model." (Id. at ¶¶36-37.)

3  Defendant moves for summary judgment on Plaintiff's Odometer Act claim on
4  the grounds that "a technical violation of the Act" does not result in liability "unless there is
5  an intent to defraud" specifically with respect to the vehicle's mileage. (Dkt. 49 at 5.)
6  Because the facts here are not disputed that Plaintiff was aware of the actual mileage of the
7  vehicle at all times, Defendant posits, Plaintiff cannot establish the requisite intent to defraud
8  as a matter of law. (Id.)  Plaintiff argues that the Circuits are split on the issue of whether
9  the requisite intent to defraud must be with respect to mileage alone. She contends this Court
10 should adopt "the plain and unambiguous language of the Act," which "does not require an
11 intent to defraud with respect to mileage." (Dkt. 50 at 14.)

12     **2.    Congress Intended the Odometer Act To Regulate Odometer Fraud**

13 In the present case, Plaintiff does not dispute the accuracy of the mileage
14 disclosed by Defendant. (Dkt. 51 at ¶20.) Nor does either party dispute whether each is a
15 "transferor" or "transferee" for purposes of the Act. (Dkt. 19 at 1-2.) Thus, the key issue
16 here is whether the Odometer Act creates a private right of action based on a violation of 49
17 C.F.R. § 580.5(c) where the transferor's fraudulent intent is unrelated to a vehicle's odometer
18 or mileage – an issue of first impression in the Ninth Circuit and one on which two Circuits
19 have split. Compare Owens v. Samkle Automotive Inc., 425 F.3d 1318 (11th Cir. 2005)
20 (holding, buyer's allegation that seller's failure to provide buyer with certificate of title when
21 seller was falsely marketing the vehicle as "new" was sufficient to state a claim pursuant to
22 the Federal Odometer act) With Ioffe v. Skokie Motor Sales, Inc., 414 F.3d 708, 709 (7th Cir.
23 2005) ("[A]n Odometer Act claim that is brought by a private party and is based on a
24 violation of § 580.5(c) requires proof that the vehicle's transferor intended to defraud a
25 transferee with respect to mileage.")  For three reasons, the Court is not persuaded that the
26 right to sue extends to situations where the transferor intended to, and did, accurately disclose
27 the vehicle's mileage. Rather, the Court finds that the Odometer Act creates a private right

28

- 6 -

1 of action for a violations of section 580.5(c) only if it is accompanied by an "intent to
2 defraud" with respect to the vehicle's mileage.

3       First, the clear and unambiguous language of the Odometer Act demonstrates
4 that there must be fraudulent intent with respect to the decision not to disclose mileage on
5 the title, not merely with respect to the decision to withhold a certificate of title for reasons
6 unrelated to mileage. Therefore, Plaintiff's interpretation of the regulation at issue here
7 impermissibly conflicts with the plain language of the statute.

8       When evaluating agency regulations promulgated pursuant to statute, courts
9 must first examine the statute itself to determine whether Congress has spoken directly to the
10 precise question. "If the intent of Congress is clear, that is the end of the inquiry because
11 agencies (and courts reviewing their actions) must give effect to the unambiguously
12 expressed intent of Congress." Earth Island Inst. v. Ruthenbeck, 459 F.3d 954, 964 (9th Cir.
13 2006) (citing Chevron U.S.A. Inc. v. Nat'l Resources Defense Council, Inc., 467 U.S. 837,
14 842-43 (1984)). In the Odometer Act, Congress created a private right to sue a transferor for
15 failure to disclose "the cumulative mileage registered on the odometer," "with intent to
16 defraud." See 49 U.S.C. § 32705(a)(1)(A); 32710(a). Thus, the clear and unambiguous
17 meaning of the Act provides a private claim for odometer or mileage fraud. In authorizing
18 the Secretary of Transportation to issue implementing regulations, Congress directed the
19 Secretary to prescribe "the way in which [the cumulative mileage] . . is disclosed and
20 retained." See 49 U.S.C. § 32705(a)(1). Therefore, if this Court were to credit Plaintiff's
21 argument – that the "intent to defraud" element must be read in connection with the specific
22 conduct required by § 580.5(c) – the regulation would do far more than dictate "the way in
23 which [the cumulative mileage] . . . is disclosed and retained." Rather, it would render the
24 regulation in conflict with the Odometer Act by increasing the number and type of private
25 claims available, thereby expanding the private claim far beyond the scope provided for by
26 Congress in the Act. See Earth Island Inst., 459 F.3d at 964 ("If an agency's regulation is
27 in conflict with the plain language of the statute, reviewing courts do not owe deference to

28

1 the agency's interpretation."). To avoid creating such an impermissible conflict, this Court
2 construes the Act as creating a private right of action for violations of § 580.5(c) only where
3 a transferor fails to disclose a vehicle's mileage to the transferee in writing on the title in
4 order to defraud the transferee as to the vehicle's mileage.

5 Second, "a requirement that a transferor's fraudulent intent relate to the
6 vehicle's mileage comports with the expressed purposes of the Act and regulations." Ioffe,
7 414 F.3d at 713. Congress clearly stated that the Odometer Act has two purposes: "(1) to
8 prohibit tampering *with motor vehicle odometers*; and (2) to provide safeguards to protect
9 purchasers in the sale of motor vehicles *with altered or reset odometers*." 49 U.S.C. § 32701,
10 emphasis added. In keeping with the express purposes of the Act (and its predecessor), a line
11 of cases dating back more than thirty years holds that civil liability under the Odometer Act
12 is limited to mileage fraud and odometer tampering. See Ioffe, 414 F.3d at 713-14; Locascio
13 v. Imports Unlimited, Inc., 309 F.Supp.2d 267, 270-71 (D.Conn. 2004); Mayberry v.
14 Ememessay, Inc., 201 F.Supp.2d 687, 694-96 (W.D.Va. 2002); Michael v. Ferris Auto Sales,
15 650 F.Supp. 975, 976-77 (D.Del. 1987); Purser v. Bill Campbell Porsche Audi, Inc., 431
16 F.Supp. 1235, 1237 (N.D.Fla. 1977). Indeed, "[a] contrary holding would ascribe to
17 Congress the unlikely, and unsupported, intent of allowing the Odometer Act to serve as a
18 vehicle for plaintiffs to bring numerous state-law claims into federal court, simply because
19 the claims concern defects in an automobile's certificate of title." Locascio, 309 F.Supp.2d
20 at 270-71; accord Mayberry, 201 F.Supp.2d at 695-96 ("To hold otherwise would expand the
21 meaning of the Federal Odometer Act so that almost any state-law claim for fraud
22 [implicating a car sale] would also be a violation of federal law. Even the idea that there can
23 be a 'non-mileage violation' of an act whose central purpose is to ensure the accurate
24 reporting of mileage strains credulity."). Given Congress's expressly identified purposes in
25 creating the Odometer Act, this Court rejects Plaintiff's request to use the Act as a basis for
26 liability in the present case, where neither party disputes that Defendant did not intend to
27 defraud Plaintiff with respect to the car's mileage. See Locascio, 309 F.Supp.2d at 270- 71
28

- 8 -

1  (plaintiff failed to show dealer intended to commit fraud regarding mileage when it withheld
2  title certificate to prevent purchaser from learning that car was "rebuilt").

3  Third, the relevant provisions of the Code of Federal Regulations demonstrate
4  that the Odometer Act is concerned with fraud related to a vehicle's mileage, rather than any
5  fraud involving the withholding of a title.  Section 580.5(c) appears in Part 580 of Title 49
6  of the Code of Federal Regulations, which is titled, "Odometer Disclosure Requirements."
7  The purpose of Part 580, in pertinent part, is "to provide purchasers of motor vehicles with
8  odometer information to assist them in determining a vehicle's condition and value by
9  making the disclosure of a vehicle's mileage a condition of title."  See 49 C.F.R. § 580.2.
10 The "scope" of Part 580 is to "prescribe[] rules requiring transferors . . . of motor vehicles
11 to make written disclosure to transferees . . . concerning the odometer mileage and its
12 accuracy," as directed by sections 32705(a) and (c).  49 C.F.R. § 580.1.  Thus, the language
13 of the Odometer Act's implementing regulations demonstrate that a private right of action
14 based on a violation of § 580.5(c) extends only to cases where the transferor intended to
15 defraud a transferee as to the vehicle's mileage.

16 Consistent with Congress's expressly identified purposes of the Odometer Act
17 – prohibiting odometer tampering and providing safeguards to protect purchasers from
18 buying cars with altered or reset odometers – the Court will grant summary judgment in favor
19 of Defendant on Plaintiff's Odometer Act claim because it is undisputed that Defendant did
20 not intend to defraud Plaintiff as to the car's mileage or by odometer tampering.

21 **B.     Summary Judgment Will Not be Granted on Plaintiff's Consumer Fraud Claim**

22 Plaintiff's consumer fraud claim is based on Defendant's alleged misrepresentations
23 that the Jeep was a "new" vehicle and had previously been driven by an executive of the
24 company.  See Dkt. 50 at 10.

25 The Arizona Consumer Fraud Act provides an injured consumer with an implied
26 private right of action against the violator of the act.  A.R.S. § 44-1522; Dunlap v. Jimmy
27 GMC of Tucson, Inc., 666 P.2d 83, 87 (Ariz. App. 1983).  The elements of such private

- 9 -

1  cause of action are "a false promise or misrepresentation made in connection with the sale
2  or advertisement of merchandise and the hearer's consequent and proximate injury." Id.
3  Damage or injury occurs when the consumer relies on the misrepresentation even though the
4  reliance is not reasonable. Correa v. Pecos Valley Dev. Corp., 617 P.2d 767, 771 (Ariz. App.
5  1980). Unlike common law fraud claims, Plaintiff has the burden of proving the elements
6  of a consumer fraud claim by a preponderance of the evidence. Dunlap, 666 P.2d at 89.

Summary judgment will not be granted in favor of Plaintiff or Defendant on Plaintiff's consumer fraud claim because there are at least two material disputed facts. First, Sierdsma denies telling Plaintiff that the Jeep was previously driven by a company executive, see Dkt. 62 at ¶18 and ex. E at 46, while Plaintiff avers that Sierdsma falsely told her the Jeep had 17,000 miles on it because it was previously driven by an executive with the company. (Dkt. 51 at ¶20 and ex. A at ¶¶ 22-23.) Second, Defendant has presented evidence from which a jury could infer that the designation "new" on the Sales Contract was a clerical error, rather than a deliberate misrepresentation. (Dkt. 62 at ¶22.) In response to Defendant's evidence, Plaintiff has presented evidence from which an inference could be drawn that no such "error" could have occurred. (Dkt. 63 at 1-3.) Given that genuine issues of material facts are disputed with respect to whether Defendant committed a false representation in connection with the sale of the Jeep to Plaintiff, summary judgment will be denied.

Plaintiff argues that summary judgment should be granted in her favor on the consumer fraud claim because there are no material disputed facts. The Court disagrees.

First, Plaintiff contends there is no genuine dispute as to whether Sierdsma told Plaintiff that the Jeep had been driven by an executive of the company because Sierdsma testified in his deposition that he did not remember the specifics of his conversation with Plaintiff and Defendant "cannot create an issue of fact by an affidavit contradicting prior deposition testimony." See Dkt. 50 at 7, 10-11. Plaintiff is correct that deposition testimony may not be contradicted by a subsequent affidavit in order to create an issue of fact. See Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) (a party cannot create

an issue of fact by an affidavit contradicting his prior deposition testimony). However, the Court rejects Plaintiff's argument because Sierdsma also testified *at his deposition* that he never told Plaintiff the Jeep had been driven by an executive with the company. See Dkt. 62 at ¶18 and ex. E at 46.

Second, Plaintiff argues that the Court cannot consider Mr. Roberts's testimony that Defendant made a "clerical keystroke error" when it designated the Jeep as "new" because "Roberts's affidavit fails to show that he has personal knowledge as to how this alleged mistake occurred." (Dkt. 50 at 5.) The Court agrees with Plaintiff that Mr. Roberts lacks personal knowledge as to whether the Jeep was designated "new" due to a keystroke error by a clerical worker. Mr. Roberts's testimony in this respect is hereby stricken. See Dkt. 49, Ex. 3 at ¶8 at line 6. However, because he served as the dealership's Operations Manager in September 2004, Mr. Roberts has personal knowledge of the dealership's computer system. Indeed, he previously testified that he is the person most knowledgeable about contractual agreements produced by the computer system. See Dkt. 51, Ex. B at 35:16-37:19. Given his position as Operations Manager with knowledge of the computer system, Mr. Roberts's testimony that the computer system automatically defaults to "new," and must be manually changed to designate a vehicle as "used," is supported by personal knowledge. See Dkts. 49, Ex. 3 at ¶8; 51, Ex. B at 37:1-4. Moreover, construing all inferences from this evidence in favor of Defendant, as required on summary judgment, the Court concludes there is a genuine factual dispute as to whether the designation "new" resulted from a computer error or was a deliberate act.

**C. Summary Judgment Will Not be Granted on Plaintiff's Contract Claim**

Plaintiff's breach of contract claim is based on her allegation that the dealership breached the Sales Contract's express warranty that the Jeep was "new" when, in fact, the Jeep had previously been used by an ordinary consumer. (Dkt. 50 at 7-8.)

In order to succeed on her breach of contract claim, Plaintiff must demonstrate that the dealership made an "express warranty," which was later breached. Pursuant to A.R.S.

1  § 47-2313, an express warranty arises when a seller makes a statement of fact to the buyer
2  which relates to the good and that statement is part of the basis of the bargain. A.R.S. § 47-
3  2313(A)(1).  Where the buyer knows that a representation by the seller is false, the
4  representation is not an express warranty because it is not part of the basis of the bargain.
5  See King v. O'Rielly Motor Co., 494 P.2d 718, 723-24 (Ariz. App. 1972).

6  Although it is undisputed that the dealership represented the Jeep as "new" on the
7  Sales Contract, there is a genuine dispute of material fact with respect to whether a "new"
8  Jeep was part of the basis of the bargain.  Plaintiff avers that she would not have agreed to
9  buy the Jeep if she had known that it was an ordinary used vehicle (dkt. 51 at ¶31). From this
10 evidence, a jury could reasonably conclude that "new" was part of the basis of the bargain.
11 Defendant, on the other hand, has presented evidence from which a jury could reasonably
12 conclude that "new" was not part of the basis of the bargain:  (i) the Jeep had 17,752 miles
13 on it; (ii) no one from the dealership told Plaintiff the Jeep was "new" before she agreed to
14 buy it; and (iii) no one from the dealership told Plaintiff the Jeep had never been registered.
15 See Dkt. 49, ex. 1 at 2531-34, 38.  Because there is a genuine dispute of material fact as to
16 whether the Jeep being "new" was part of the basis of the bargain, summary judgment will
17 not be granted in favor of Plaintiff or Defendant on the breach of contract claim. See King,
18 494 P.2d at 723-24 (fact that manufacturer's automobile is sold under a "new car" warranty
19 does not impose liability upon the manufacturer to the consumer on the ground that the car
20 was not "new"because buyer believed car was a demonstrator car and knew it had been
21 driven 7,500 miles).

22 **D.     <u>Summary Judgment Will Not be Granted on Plaintiff's Request for Punitives</u>**

23 In connection with her consumer fraud claim, Plaintiff seeks to recover punitive
24 damages from Defendant. (Dkt. 18 at ¶47.) Punitive damages are allowed for violations of
25 the Arizona Consumer Fraud Act. Dunlap, 666 P.2d at 87-88.  "To obtain punitive damages,
26 a plaintiff must prove that 'defendant's evil hand was guided by an evil mind.'" Volz v. The
27 Coleman Co., Inc., 748 P.2d 1191, 1194 (Ariz. 1987) (citation omitted).  Plaintiffs must do

28

1 so by clear and convincing evidence. Thompson v. Better-Bilt Aluminum Products, Co., Inc., 832 P.2d 203, 209 (Ariz. 1992). The requisite evil mind may be established in two ways: 1) defendant "intended to injure the plaintiff" or 2) defendant "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." Gurule v. Illinois Mutual Life and Cas. Co., 734 P.2d 85, 87 (Ariz. 1987). The existence of factors constituting an "evil mind" can be inferred from the evidence, including proof of defendant's conscious and deliberate disregard of the interests of others. Id.

In the present case, the Court will not grant summary judgment in Defendant's favor on Plaintiff's request for punitive damages. Plaintiff has presented evidence that the dealership's representatives intentionally provided her with a false history of the Jeep in order to convince her to buy it at an over-inflated price, resulting in a dealership profit of $10,000. (Dkt. 51 at ¶¶ 20-21, 37.) As stated above, the material facts with respect to whether Defendant falsely represented the Jeep are disputed. However, construing inferences from the evidence in the light most favorable to Plaintiff, as the Court must do on summary judgment, a jury could reasonably conclude that Defendant pursued its own objective – selling the Jeep at an inflated price in order to obtain as much profit as possible – by improper means, knowingly and intentionally misrepresenting the Jeep's history. Fraud and misrepresentation are not acceptable business practices, and the conscious evil of such behavior is obvious. Because a jury could reasonably conclude that Defendant pursued conduct aimed at serving its own interests with despite knowledge that its acts were wrongful, there is a sufficient basis to send the punitive damages issue to the jury.

Accordingly,

**IT IS HEREBY ORDERED GRANTING**, in part, **AND DENYING**, in part, Defendant's Motion for Summary Judgment, as stated above. (Dkt. 49.)

**IT IS FURTHER ORDERED DENYING AND DISMISSING** Plaintiff's claim for violation of the Federal Odometer Act with prejudice. See Dkt. 18 at ¶¶32-40.

1    **IT IS FURTHER ORDERED DENYING** Plaintiff's Cross-Motion for Summary
2    Judgment.  (Dkt. 50.)

3    **IT IS FURTHER ORDERED GRANTING** Plaintiff's Motion for Leave to File a
4    Supplemental Memorandum in Support of Plaintiff's Response to Defendant's Motion for
5    Summary Judgment.  (Dkt. 64.)

6    **IT IS FURTHER ORDERED** that the attorneys for each party <u>who will be
7    responsible for trial of the lawsuit</u> shall appear at a Status Conference on January 17, 2007
8    at 11:30 a.m. in courtroom # 605 on the sixth floor of the United States Courthouse, 401
9    West Washington Street, Phoenix, Arizona.

10   DATED this 8th day of January, 2007.

_____
Stephen M. McNamee
United States District Judge